THOMAS, Circuit Judge,
with whom MICHAEL DALY HAWKINS, Circuit Judge, joins, concurring in part and dissenting in part:
I concur in the majority’s holding that Gill v. Easebe Enters. (In re Easebe Enters.), 900 *707 F.2d 1417 (9th Cir.1990), should be overruled. For the reasons ably stated in the majority opinion, option contracts do not necessarily fit the traditional definitions of “ex-ecutory contracts,” nor can they always be construed as assets. That determination should be made on a case by case basis under the theory long propounded by Professor Countryman.
However, I join Judges Fernandez and Rymer in their concerns about the constraints placed on the bankruptcy court on remand. In addition to the issues identified by Judge Fernandez, the bankruptcy court should be allowed to examine any other issues presented by the parties or apparent to the court, such as the effect of Southmark’s failure to disclose the option in its bankruptcy,[1] the reversionary provisions of the plan, and whether Southmark is in fact the proper party. The majority, in my view, unnecessarily and improvidently precludes the bankruptcy court from these inquiries on remand.
There is, however, an additional aspect to the majority’s analysis which causes me to write separately. By imposing our view of how option contracts should be treated under 11 U.S.C. §§ 365 and 1123(b)(2) on a Fifth Circuit bankruptcy, the majority unnecessarily intrudes upon the law of another circuit.
The threshold question in this ease is what happened to the option during the South-mark bankruptcy in Texas. Did the confirmed reorganization plan extinguish the option, or did the option survive? If the option did not survive, there is nothing for us to decide. If it survived the Texas bankruptcy as an asset, then we cannot declare the option to be an executory contract because the confirmed Texas bankruptcy plan is res judi-cata as to that issue. 11 U.S.C. § 1141(a); Eubanks, 977 F.2d at 171.
The majority quite properly directs the bankruptcy court’s initial attention to the Southmark plan itself, as the plan may well resolve the issue on its face. The plan may also answer other relevant questions, such as whether undisclosed assets reverted to the debtor upon confirmation. However, if the plan is silent as to these important matters, as it may very well be, the majority directs the court to apply executory contract law as we have now declared it without reference to existing Fifth Circuit precedent. It is on this issue I must differ with the majority.
When parties to a reorganization plan use a legal term of art, they necessarily do so with reference to the legal authority which binds them. If, therefore, the Fifth Circuit has decided that options are to be considered executory contracts, Fifth Circuit bankruptcy practitioners have a right to rely upon that decision in constructing and voting upon a reorganization plan.[2] Thus, the determination of whether the phrase “executory contract” embraced options in a previously confirmed Texas bankruptcy plan is not guided by how we believe the Fifth Circuit might hypothetically decide a bankruptcy appeal now or, for that matter, how we would. Rather, the critical question is what the parties intended,[3] and what the plan provided as the law was applied at the time.[4] To hold *708 otherwise would necessarily give new case law retroactive effect, allowing alteration of rights previously settled by judicial confirmation of a reorganization plan.
The issue arises here because of a Fifth Circuit decision, Rivercity v. Herpel (In re Jackson Brewing Co.), 567 F.2d 618 (5th Cir.1978), which appears to have been the law of the Fifth Circuit at the time the Southmark plan was confirmed, and which further appears to hold that options are exec-utory contracts.[5] The majority would prevent the bankruptcy court from considering this case, or any other Fifth Circuit authority, and would require the court to construe the phrase under the new Ninth Circuit analysis we have announced today. Thus, the majority accomplishes a neat feat: it creates an inter-circuit conflict with the Fifth Circuit’s opinion in Jackson Brewing Co., and resolves the conflict by declaring Fifth Circuit authority inapplicable to a Texas bankruptcy.
The Ninth Circuit has a large geographic reach, but to date it has not included the State of Texas. The majority opinion would alter this, applying Ninth Circuit law to an ongoing Texas bankruptcy. In my view, the proper approach is to remand without precluding the court from considering applicable Fifth Circuit law, if the parties’ intent cannot be discerned. Comity and simple respect for our colleagues in another circuit demand no less.
Thus, although I endorse the majority’s analysis of option contracts, I respectfully dissent in part.

. Willful nondisclosure is, after all, a federal crime. 18 U.S.C. § 152; see also United States v. McCormick, 72 F.3d 1404 (9th Cir.1995); United States v. Nazifpour, 944 F.2d 472 (9th Cir.1991). Failure to disclose claims against third parties may also estop debtors from asserting those claims in subsequent proceedings. Eubanks v. F.D.I.C., 977 F.2d 166, 174 (5th Cir.1992). Thus, while Southmark may have an adequate explanation for nondisclosure, we err by precluding the bankruptcy court from considering the issue on remand.

. As the Fifth Circuit has observed in another context: “In general, parties intending to be bound by a statute intend to be bound by the body of judicial decisions interpreting and applying the statute.” Shell Oil Co. v. M/T GILDA, 790 F.2d 1209, 1213 (5th Cir.1986).

. See, e.g., United States v. Motor Vehicle Mfrs. Ass'n, 643 F.2d 644, 651 (9th Cir.1981) (noting in the case of consent judgments, that "[w]hile the district court is bound to construe the judgment by the meaning to be found within its 'four comers,’ the court may also consider the surrounding circumstances at formation as aids in construing the judgment”) (citation omitted).

. A confirmed reorganization plan operates as a final judgment with res judicata effect. 8 Collier on Bankruptcy ¶ 1141.02[4] (15th ed.1997). A change in case law does not alter the res judicata effect of a prior judgment. See, e.g., Federated Dept. Stores, Inc. v. Moitie, 452 U.S. 394, 398, 101 S.Ct. 2424, 2427-28, 69 L.Ed.2d 103 (1981); Clifton v. Attorney Gen. of Cal., 997 F.2d 660, 663 (9th Cir.1993). This is true even if the bankruptcy court and the parties operated under a misap *708 prehension of applicable law. See Multnomah County v. Ivory (In re Ivory), 70 F.3d 73, 75 (9th Cir.1995). Thus, the law extant when the plan was confirmed must govern interpretation of legal terms of art, if those terms are undefined by the plan and the parties’ intent cannot be discerned.

. Fifth Circuit law on executory contracts has evolved subsequent to confirmation of the South-mark plan. See, e.g., Phoenix Exploration, Inc. v. Yaquinto (In re Murexco Petroleum, Inc.), 15 F.3d 60, 62 (5th Cir.1994). However, Jackson Brewing Co. has never been overruled and appears to have been the unquestioned law of the circuit when Southmark proposed its final reorganization plan.